[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11685
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cv-62469-MGC


VITAL PHARMACEUTICALS, INC.
d.b.a VPX Sports,
JOHN OWOC,

                              Plaintiffs–Counter Defendants–Appellants,


                    versus


BALBOA CAPITAL CORPORATION,

                              Defendant–Counter Claimant–Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 3, 2020)

Before JORDAN, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Vital Pharmaceuticals, Inc., which does business as VPX Sports ("VPX"), appeals from the district court's grant of summary judgment to the Balboa Capital Corporation.  VPX argues that the Master Lease agreement between it and Balboa, which provided for the lease of several pieces of manufacturing equipment, was ambiguous, and that VPX was entitled to exercise a purchase agreement at the end of the lease period.  For the reasons that follow, we disagree and affirm the district court's order.

## I. BACKGROUND

Because we write only for the benefit of the parties, we provide an abbreviated version of the facts.  VPX entered into a Master Lease with Balboa in 2009 to lease several pieces of commercial equipment from Balboa to manufacture its nutritional supplements under four equipment schedules incorporated into the lease.

 The Master Lease, in relevant part, provided in Paragraph 4 that it was a "Finance Lease as defined by" Section 10103(a)(7) of the California Uniform Commercial Code and stipulated the basic elements of a "Finance Lease" in subparagraphs (a) through (e), but then in subparagraph (f) expressly disclaimed giving Lessee any "other rights with respect to the purchase of the Equipment." Paragraph 4 provides in full:

> 4. FINANCE LEASE STATUS. "The parties agree that this Lease is a
> Finance Lease as defined by Section 10103(a)(7) of the California

2

Uniform Commercial Code ("UCC"). Lessee acknowledges the following: (a) Lessor has not selected, manufactured, or supplied the Equipment; (b) Lessor acquired the Equipment or the right to possession and use of the Equipment in connection with the Lease; (c) Lessee has received, reviewed and approved all written Supply Contracts (as defined by UCC Section 10103(a)(25)) covering the Equipment purchased from the Supplier (as defined by UCC Section 10103(a)(24)) thereof for lease to Lessee on or before signing this Lease Contract (as defined by UCC Section 10103(a)(12)); (d) Lessor has informed Lessee in writing of the identity of the Supplier; (e) Lessor has informed Lessee that Lessor may have rights under the Supply Contract and that Lessee is to contact the Supplier for a description of any such rights, and (f) Lessor provides no warranties or other rights with respect to the purchase of the Equipment and any and all rights Lessee has with respect to the purchase of the Equipment are solely against supplier, and Lessee may communicate at any time with the supplier prior to executing this Lease.

With regard to ownership, the Master Lease provided in Paragraph 9 that the leased equipment "is, and shall at all times be and remain, the sole exclusive property of [Balboa], and [VPX] shall have no right, title or interest therein or thereto except as expressly set forth in this Lease."  Under Paragraph 18 titled "Return of Equipment," the Master Lease required VPX to "deliver the Equipment . . . to [Balboa's] premises" *unless* it "shall have duly exercised any purchase options with respect to such Lease."

After one of the equipment schedules incorporated into the Master Lease expired, VPX expressed an interest in exercising a purchase option.  Balboa replied that all of the leases were "true leases with Fair Market buyouts."  In other words, Balboa informed VPX that, by its interpretation of the contract, the Master Lease

3

had no purchase option and that if VPX wanted to purchase any of the equipment, it would have to pay fair market value.

Acting pursuant to the Master Lease's provision that "each Lease shall automatically be extended for six months following the end of the initial base term" unless it was terminated by VPX, Balboa renewed the lease and began charging VPX. However, Balboa began overcharging VPX on the lease. Once the parties realized the mistake, they agreed that the overcharges would be credited as down payments for the purchase of the piece of equipment rented under that schedule. VPX similarly failed to terminate the other lease schedules. It again reached out to Balboa to discuss exercising a purchase option, and Balboa again replied that the Master Lease did not allow for such a purchase option.

VPX filed the instant suit against Balboa, alleging breach of contract, Florida's Deceptive and Unfair Trade Practices Act, fraud, fraudulent concealment, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and reformation against Balboa. Only the breach of contract claim is before us on appeal.[1] VPX argued that the Master Lease was ambiguous and allowed for VPX to exercise a purchase option, and introduced an expert report to that effect. Balboa asserted several counterclaims against VPX for breach of

---

[1]    The district court also rejected VPX's other claims and VPX has not challenged those rulings on appeal.

4

contract.  The district court granted Balboa summary judgment on VPX's claims and Balboa's counterclaims.  Applying California law,[2] it concluded that the Master Lease was unambiguous and contained no purchase option.  Regarding VPX's expert report, the district court applied California's two-step test for receiving extrinsic evidence, and determined that the expert report did not alter the plain meaning of the contract.  It ultimately awarded Balboa around $650,000 in damages.  VPX timely appealed to us.

## II. ANALYSIS

As a threshold matter, we note that "[w]e review *de novo* a grant of summary judgment."  *Doe v. Valencia Coll.*, 903 F.3d 1220, 1229 (11th Cir. 2018).  In so doing, we apply the same legal standards that controlled the district court.  *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310 (11th Cir. 2013).  Whether a contract is ambiguous and questions of contract interpretation "are pure questions of law, also reviewed *de novo*."  *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019).  A party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[2]    The district court correctly noted that the parties stipulated that California law applied to the interpretation of the contract, and that Florida law applied to the tort claims.  The parties do not contest this on appeal.

5

VPX raises two arguments on appeal: (1) that the Master Lease was ambiguous, and contained a purchase option; and (2) that the district court violated California law in its treatment of VPX's proffered expert report.  We address each in turn.

First, with regard to the question of contract interpretation, VPX argues that the Master Lease was a "finance lease," not a "true lease," and that by identifying the lease as such, it was effectively a disguised secured transaction and necessarily included a purchase option.  It is not in dispute that, by the Master Lease's own terms, it did refer to itself as a "finance lease."  In relevant part, the Master Lease stated: "The parties agree that this Lease is a Finance Lease as defined by Section 10103(a)(7) of the California Uniform Commercial Code ('UCC')."

The difficulty for VPX, however, comes from the fact that neither the Master Lease nor section 10103(a)(7) states that a finance lease either functions as a disguised security agreement or contains a purchase option.  Instead, we read section 10103(a)(7)'s commentary as explicitly foreclosing VPX's argument.  The relevant commentary begins by explaining what a finance lease *is*:

> A finance lease is the product of a three party transaction. The supplier manufactures or supplies the goods pursuant to the lessee's specification, perhaps even pursuant to a purchase order, sales agreement or lease agreement between the supplier and the lessee. After the prospective finance lease is negotiated, a purchase order, sales agreement, or lease agreement is entered into by the lessor (as buyer or prime lessee) or an existing order, agreement or lease is assigned by the lessee to the lessor, and the lessor and the lessee then enter into a lease

6

or sublease of the goods.

Cal. U. Com. Code § 10103 cmt. (g).  It then explains that, "to avoid confusion, it is important to note that *in other contexts, e.g., tax and accounting*, the term finance lease has been used to connote different types of lease transactions, *including leases that are disguised secured transactions*."  *Id.* (emphasis added).

The district court's order conducted an objective evaluation of the economics of the transaction, and we agree with its analysis.  It correctly noted that the Master Lease, by its own terms, did not offer a purchase option.  Instead, it states that the Lessor provides no rights with respect to the purchase of the equipment.  A plain-text reading of the contract language makes clear that any purchase option must be incorporated through *another* agreement and that the leased equipment "is, and shall at all times be and remain, the *sole and exclusive property* of" Balboa (emphasis added).

We cannot embrace VPX's argument that the singular reference to the Master Lease as a "Finance Lease" creates ambiguity.  While it is true that a "finance lease," in *some* contexts, refers to a disguised security transaction, *see* Cal. U. Com. Code § 10103 cmt. (g), the California UCC is clear that in a context like *this* one, that is not the case.  Adopting VPX's argument would override plain contractual language—and to no clear end.  We affirm the district court's order in this regard.

Second, VPX argues that the district court erred by not following California contract law regarding extrinsic evidence. We begin by noting that California applies a much more inclusive view of extrinsic evidence than most other states. Under California's two-step test, the court first "provisionally receives (without actually admitting) all credible evidence concerning the parties' intention to determine 'ambiguity.'" *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010) (quoting *Winet v. Price*, 4 Cal. App. 4th 1159 (Ct. App. 1992)). It only reaches the second step—interpretation of the contract—if the court concludes that "the language is 'reasonably susceptible' to the interpretation urged." *Id.*

Accordingly, in this case, the district court was required under California law to provisionally consider VPX's proffered expert report. VPX argues that the district court did not do so. We disagree. While the district court certainly could have considered the expert report at greater length, we read its opinion as conducting *Pacific Gas*'s two-step process and ultimately concluding at step one that, even "provisionally accept[ing] Plaintiffs' proffered evidence, the language of Paragraph 18 of the Master Lease is not 'reasonably susceptible' to the interpretation urged by Plaintiffs." Dist. Ct. Op. at 10. In light of our foregoing analysis, which concludes that there is no ambiguity in the contract, we cannot conclude that the district court erred in this regard. We affirm the district court's

8

order.

## III. CONCLUSION

For the foregoing reasons, the district court's order is

AFFIRMED.